# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| EARNEST W. HANEY, | ) |
| | ) |
| Movant, | ) |
| | ) |
| v. | ) Case No. 18-05021-CV-SW-RK-P |
| | ) Crim. No. 15-05018-01-CR-SW-RK |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## ORDER

Movant pleaded guilty to receipt and distribution of child pornography. He was sentenced below the Sentencing Guidelines to 180 months of imprisonment followed by 10 years of supervised release. Now before the Court is his second amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 on allegations of ineffective assistance of counsel by attorney Mr. Dee Wampler. Doc. 23.[1] For the reasons set forth below, the Court DENIES the motion filed pursuant to § 2255 and DENIES a certificate of appealability.

**I.     Background**

On May 5, 2015, a federal grand jury returned a single-count indictment charging Movant with knowingly receiving and distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) and (b)(1). Crim. Doc. 1. On October 20, 2016, Movant pleaded guilty without a plea agreement. Crim. Doc. 41.

During the plea hearing, Movant indicated that he had had enough time to speak with his attorney. Crim. Doc. 44 at 9. Movant stated that he was satisfied with the advice of his counsel. *Id.* Further, Movant told the Court he understood that if convicted, "the minimum penalty the Court may impose is not less than five years, while the maximum penalty was not more than 20 years' imprisonment, not more than a $250,000 fine, not less than five years' supervised release, or not more than life supervised release, and a $100 mandatory special assessment." Doc. 44 at 3.

---

[1] "Crim. Doc." refers to the docket number entries in Movant's criminal case. "Doc." refers to the docket number entries in Movant's civil case.

On January 19, 2017, a final presentence investigation report (PSR) was issued. Crim. Doc. 53. The PSR described Movant's offense conduct, and Movant did not object to the description. *Id.* at 3-5.

The offense conduct portion of the PSR stated:

According to a police report prepared by the Joplin, Missouri, Police Department on August 7, 2006, an officer was dispatched to 2601 S. Minnesota Avenue, Joplin, Missouri, in reference to a juvenile check. Dispatch advised that they had received a call from Denise Haney's aunt who advised Denise and her father, the defendant, had been fighting and that the defendant had been drinking. She then advised Denise had told her that the defendant had pornographic pictures of children on his computer.

Upon arrival, an officer made contact with Denise who advised that approximately two months ago her father called her needing her to look up something on his computer. She stated that when she got onto the computer there were pictures of young, nude boys and girls. The officer then spoke with the defendant who admitted to possessing adult pornographic material on his computer. The defendant denied that his computer contained child pornography. The officer obtained the serial number off the back of the computer for further investigative purposes.

After officers spoke with the defendant's mother, Joan Coonrad, the agency marked the investigation as inactive. Ms. Coonrad, when questioned by police, advised that Denise and the defendant had not been getting along. She further relayed that Denise wanted to go reside with her mother, Shelly Webb, in Mount Vernon, Missouri. When confronted by police with the information that Denise had shared about the defendant's computer content, Ms. Coonrad advised officers that "she seriously doubted if Denise was telling the truth." The investigating officers felt that Ms. Coonrad was being honest with her opinion and other information she had provided. After talking to Ms. Coonrad, officers attempted to contact Denise and her mother by leaving phone messages; however, they did not respond.

Beginning in July of 2013, the Department of Homeland Security launched an undercover investigation concerning the distribution of child pornography by suspect(s) using file sharing software, particularly utilizing the Ares network. Specifically, on July 23, 2013, members of the Southwest Missouri Cyber Crimes Task Force found several videos depicting child pornography from a remote computer utilizing a peer-to-peer file-sharing program. The computer using the IP address 72.24.93.8 was observed sharing several videos containing suspected child pornography. Utilizing an undercover computer, an investigator was able to make a direct connection with the suspect computer and browse the files available for sharing on the suspect's computer. The computer contained thirteen files of interest.

From July 23, 2013, to July 26, 2013, the investigator was able to obtain four video files from the suspect computer. The computer was using the Ares software, reporting its version as 2.2.4.3048, and the account was nicknamed anon_48185d08@Ares.

In reviewing the files that were distributed to the undercover computer, the investigator located a three minute and twenty-two second long video file, that begins with an adult white male subject and a white female juvenile, both naked. The male subject is inserting his finger into the child's anus. The female appears to be between eight and eleven years of age. The female rolls over and the male rubs his penis on the child's anus. The male inserts his penis into the child's anus. The other videos and/or images depict male and female children that range in age from seven to thirteen years old. The images depict the display of genitalia, digital penetration with children, penis to vagina penetration, and oral sex.

According to subscriber records that were obtained from Cable One via an investigative subpoena, the IP address utilized by the remote computer was assigned to Joan Coonrad residing at 2601 South Minnesota Avenue, Joplin, Missouri, at the time of the download. Based upon the results of the preliminary investigation, investigators obtained a federal search warrant for the residence on August 1, 2013. The warrant was executed on August 5, 2013.

Upon arrival at the residence, the investigators were greeted by the home owner, Joan Coonrad. Ms. Coonrad indicated that she lived in the house with her son, the defendant. Upon locating the defendant within the residence, an investigator asked the defendant to accompany him to his car so they could discuss the investigation. The defendant was advised of his Miranda rights and agreed to speak to the investigator. The defendant acknowledged owning the computer on which he installed the Ares file-sharing software and that he used it to download child pornography.

In the ensuing questioning, the defendant confessed that he had, in fact, downloaded child pornography and specifically used search terms as "PTHC" (meaning "Preteen Hard Core') and "tiny" to obtain such images. The defendant then led the investigators to three computers and eight optical media disk that he indicated might contain pictures of child pornography. The defendant's iPhone 4S and a floppy disk were also seized from the home.

During a forensic examination of the devices, twenty-seven images and six video files were located on the computers which contained depictions of child pornography, that is, minors engaged in sexually explicit conduct, including sexual and oral intercourse. The defendant's devices also contained anime child pornography graphics, bestiality videos, bondage/rape graphics, child erotica graphics, and drug related images that depicted probable paraphernalia in the manufacture of a controlled substance.

> During a post-Miranda interview the investigator explained to the defendant what his IP address was and showed the defendant a sheet of approximately 400 videos that he had viewed or downloaded since July 21, 2013. The investigator went onto explain that he printed off the 400 but when he let it go up to 1,000 it listed them as well. The investigator advised that he stopped printing at 400 to save paper. During a post-Miranda interview, the defendant admitted to downloading videos before he went to prison in 2010. The defendant denied any hands on offenses with any children.
>
> The computers used to download and store the files depicting child pornography were manufactured outside of the state of Missouri and the files themselves were transported to the computer via the internet.

Doc. 53 at 4-6 (paragraph numbers omitted).

Although Movant did not object to the offense conduct portion of the PSR, he did lodge objections to the enhancements and his criminal history score. Crim. Doc. 52; *see also* Crim. Doc. 53 at 22-24.

Movant's sentencing hearing was conducted on February 22, 2017. Crim. Doc. 61. At the hearing, both defense counsel and Movant withdrew the objections to the sentencing enhancements, but submitted argument relating to the criminal history category. Crim. Doc. 64 at 3. Additionally, the Court asked Movant whether he had any corrections or changes that needed to be made to the PSR, and Movant responded that he did not. Crim. Doc. 64 at 4. After listening to counsel's arguments, the Court sustained Movant's sole remaining objection[2] and determined that Movant's applicable Guidelines range was 235 to 293 months, which was statutorily capped at 240 months. *Id.* at 17.

The Court addressed Movant's motion for a downward departure. Crim. Doc. 64 at 17. The Court acknowledged several attachments, including an article by Valerie Wright, a statement to the U.S. Sentencing Commission, an article by Tess Lopez regarding Sentencing Guidelines and obscenity, and a report and assessment by Movant's treating psychologist, Dr. Michael S. Londe. *Id.* at 17-18 (citing Crim. Docs. 58, 59). The Court further considered eight character letters, including from several employees or former employees of Movant's company, Movant's mother, and other relatives. Crim. Doc. 64 at 18. Additionally, as set forth more fully below, Dr. Londe testified on Movant's behalf. *Id.* at 19.

---

[2] Specifically, the Court sustained Movant's fifth objection as set out in the PSR addendum, finding that the criminal history did not warrant a departure under U.S.S.G. § 4A1.3(b)(1). Doc. 64 at 16-17.

After Movant addressed the Court and after arguments from both counsel, the Court noted some of the aggravating aspects of this offense, including that some of the children were very young, that there was a large collection of child pornography, and that some of the images were sadistic. Crim. Doc. 64 at 44. The Court noted Movant's 2006 history of being questioned about possession of child pornography and discredited any argument that Movant did not understand the nature of the offense. *Id.* at 44.

The Court additionally considered Movant's relatively steady work history and noted that it "differentiates him from many defendants that come in this building." *Id.* The Court also noted that defense counsel effectively pointed out factors that weigh in favor of Movant, including those in the articles that defense counsel provided. *Id.* at 45. The Court also gave "considerable weight" to the Government's argument the Court should vary downward. *Id.*

Ultimately, the Court varied downward based on the suggestions of both counsel, and sentenced Movant to 180 months' imprisonment, followed by 10 years' supervised release. *Id.*

Before the Court is Movant's second amended motion pursuant to § 2255 (Doc. 23),[3] Respondent's suggestions in opposition (Doc. 26), and Movant's reply suggestions (Doc. 27).

Further facts are set forth as necessary.

**II.     Standard**

Title 28 U.S.C. § 2255 provides that an individual in federal custody may file a motion to vacate, set aside, or correct his or her sentence by alleging "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" A motion under this statute provides a statutory avenue through which to address constitutional or jurisdictional errors and errors of law that "constitute[] a fundamental defect which inherently results in a complete miscarriage of justice." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (citations omitted).

A claim of ineffective assistance of counsel may be sufficient to attack a sentence under section 2255; however, the "movant faces a heavy burden." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). In such cases, the Court must scrutinize the ineffective assistance of counsel

---

[3] Movant filed suggestions in support of his original motion in Doc. 3. Although Movant did not re-attach the suggestions in support along with his amended motion, Respondent responded to those suggestions in support and Movant references the suggestions in support from Doc. 3 in his reply brief.

claim under the two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984). *Id.* Under *Strickland*, a prevailing defendant must prove "both that his counsel's representation was deficient and that the deficient performance prejudiced the defendant's case." *Cheek v. United States*, 858 F.2d 1330, 1336 (8th Cir. 1988). As to the "deficiency" prong, the defendant must show that counsel "failed to exercise the customary skills and diligence that a reasonably competent attorney would [have] exhibit[ed] under similar circumstances." *Id.* (quoting *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir. 1985)). As to the "prejudice" prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Cheek*, 858 F.2d at 1336 (quoting *Strickland*, 466 U.S. at 694). To be sure, "[c]ounsel's failure to advance a meritless argument cannot constitute ineffective assistance." *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994).

"A § 2255 motion can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003) (citation and quotation marks omitted). Additionally, a petition that consists only of "conclusory allegations unsupported by specifics [or] contentions that, in the face of the record, are wholly incredible," is insufficient to overcome the barrier to an evidentiary hearing on a § 2255 motion. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

### III. Discussion

#### A. Counsel's advice concerning the sentencing enhancement for knowing distribution does not entitle Movant to relief under *Strickland*.

In Issue One, Movant alleges that counsel was ineffective for

> Failing to object to the fact that the sentencing enhancement for knowing distribution was based solely on a peer-to-peer file-sharing network, which is insufficient under relevant Eighth Circuit precedent; and failure to argue concomitantly for a two-level reduction pursuant to U.S.S.G. 2G2.2(b)(1). In particular, I told Mr. Wampler that the P2P network I used was installed by my daughter Denise so that I could access P90X workout videos and that I did not download the network myself. I also told Mr. Wampler that Denise did not explain the workings of the network to me, including the fact that I would have to affirmatively opt out of file-sharing if I did not want downloaded files to be available to the public, and that I was technically unsophisticated having just got out of state prison. Moreover, I made no admissions indicating that I knew that

6

downloaded files were available to others, I in fact did not know this, and I did not upload files for the purpose of sharing.

Doc. 23 at 4.

Movant alleges his counsel should have sought a reduction under Guideline § 2G2.2(b)(1), which allows for a two-level decrease if the defendant's conduct was limited to receipt or solicitation and the defendant did not intend to distribute the material. To the extent Movant challenges the interpretation of the guideline, Respondent correctly notes that "ordinary questions of guideline interpretation falling short of the 'miscarriage of justice' standard do not present a proper section 2255 claim." *Sun Bear*, 644 F.3d at 704 (citation omitted). In fact, this issue is properly raised on direct appeal. *See United States v. Durham*, 618 F.3d 921, 924 (8th Cir. 2010). To the extent Movant challenges the sufficiency of the evidence, any such claim is likewise not cognizable in this action. *Anderson v. United States*, 25 F.3d 704, 707 (8th Cir. 1994); *see also Houser v. United States*, 508 F.2d 509, 514 (8th Cir. 1974).[4] Movant does not challenge the knowing and voluntary nature of the plea and rather argues that sentencing counsel was deficient for failing to object to the enhancement.

Movant cannot establish that counsel's performance was deficient for failing to object to the enhancement because the record supports the application of the enhancement. At the plea hearing, Movant agreed that the Government could prove in part that, "The defendant acknowledged owning the computer on which he installed the Ares file-sharing software and that

---

[4] If a claim could have been raised on direct appeal but was not, it cannot be raised in a § 2255 motion unless the movant can show both (1) "cause" that excuses the default, and (2) "actual prejudice" resulting from the errors of which he complains. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 168 (1982); *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997). If a movant is unable to show "cause" and "actual prejudice," he must make a "substantial claim that constitutional error has caused the conviction of an innocent person...." *Schlup v. Delo*, 513 U.S. 298, 321 (1995). A claim of actual innocence must be based on "new evidence," and must convince the Court that "it is more likely than not that no reasonable juror would have found [movant] guilty beyond a reasonable doubt." *Id*. at 327. *See also Embrey v. Hershberger*, 131 F.3d 739, 741 (8th Cir. 1997) (applying *Schlup* actual innocence standard in the context of a § 2255 motion).

"Cause" under the cause and prejudice test "must be something external to the [movant], something that cannot fairly be attributed to him," for example, a showing that the factual or legal basis for a claim was not reasonably available, or that some interference by officials made compliance with the procedural rule impracticable. *Stanley v. Lockhart*, 941 F.2d 707, 709 (8th Cir. 1991) (citing *Coleman v. Thompson*, 501 U.S. 722 (1991)); *see also Greer v. Minnesota*, 493 F.3d 952, 957–58 (8th Cir. 2007). To establish "actual prejudice," a petitioner must demonstrate that the claimed errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Here, Movant does not claim actual innocence and does not appear to seek review of his allegations under the standard of cause and actual prejudice. Nevertheless, Movant cannot show prejudice (or actual prejudice) and therefore any such claim is procedurally barred.

he used it to download child pornography" and that "several videos depicting child pornography from a remote computer using a peer-to-peer file-sharing program" were on Defendant's computer. Crim. Doc. 44 at 7. Similarly, the offense conduct in the PSR states that Movant "acknowledged owning the computer on which he installed the Ares file-sharing software and that he used it to download child pornography," that his computer "was observed sharing several videos containing child pornography," and that an investigator "was able to obtain four video files from the suspect computer." Doc. 53 at 6. Movant thus admitted to the facts giving rise to the enhancement. *See United States v. Abrica-Sanchez,* 808 F.3d 330, 334 (8th Cir. 2015) ("[a] fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant."). Counsel's performance was reasonable because any objection to the enhancement would have been meritless. *Rodriguez,* 17 F.3d at 226 (holding that counsel's failure to advance a meritless argument cannot constitute ineffective assistance).[5] Further, Movant's allegations here that he did not know the software allowed him to share files baldly and inexplicably contradict the conduct he admitted to in the PSR. *See Blackledge,* 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of veracity."); *Apfel,* 97 F.3d at 1077 ("unsupported and self-serving" statements do not establish a basis for relief).

Additionally, assuming the Court found counsel's performance deficient, Movant cannot meet his burden of establishing prejudice because even if an objection to the enhancement had been lodged and sustained, Movant's advisory Guidelines range would have been 151 to 188 months. Movant's sentence of 180 months is within that range. Similarly, Movant cannot show prejudice because he was adequately advised of the statutory range of punishment. *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (noting that regardless of counsel's sentencing advice, movant could not show prejudice where court advised him of potential maximum sentence at plea proceeding and movant indicated he understood before pleading guilty). *See also Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012) (holding there is no miscarriage of justice where the sentence is below the statutory maximum and could be re-imposed if the relief requested was granted); *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (holding that movant did not meet his burden of establishing that counsel was ineffective as to either plea negotiations

---

[5] Movant cannot meet his burden of establishing deficient performance for the additional reason that it appears counsel helped to attain favorable argument from the Government that a below Guidelines sentence was appropriate. Movant also received a combined three-point deduction for acceptance of responsibility, including a one-point deduction that required the Government's motion. Crim. Doc. 53 at 7.

or sentencing where government and district court informed movant of his statutory sentencing range and that his advisory guideline range could differ from what his attorney predicted).

Movant is not entitled to relief as to Issue One.

> **B. Counsel's failure to raise an argument concerning the family business does not entitle Movant to relief under *Strickland*.**

In Issue Two, Movant alleges that counsel was ineffective for

> Failing to argue that my presence was necessary to keep the family business going and prevent its employees from being put out of work, although I specifically advised him that the business was at a critical point and that my supervision and presence were necessary to prevent it from going under.

Doc. 23 at 4.

Here, Movant broadly alleges that counsel failed to argue that Movant deserved a lesser sentence because he was needed to run the family business. The record indicates that during sentencing, defense counsel impressed upon the Court that Movant was the owner/operator of a successfully operating business that employed 11 people. In imposing the sentence, the Court praised Movant's steady work history and stated it would "deviate – vary downward based on the history and characteristics of the defendant and the nature and circumstances of the offense." Crim. Doc. 64 at 45. It is unclear what additional argument Movant's counsel could have undertaken on this matter so as to establish deficient performance. *See Blackledge*, 431 U.S. at 74 (a motion that consists only of "conclusory allegations unsupported by specifics [or] contentions that, in the face of the record, are wholly incredible," is insufficient to overcome the barrier to an evidentiary hearing on a § 2255 motion.)

Movant relies on *United States v. Milikowsky*, 65 F.3d 4 (2d Cir. 1995), in which the Court of Appeals for the Second Circuit rejected the Government's challenge to the sentence on direct appeal and affirmed the district court's determination that the loss of the defendant's "daily guidance would extraordinarily impact" his employees, unlike in other cases where "high-level business people" were sentenced. *Id.* at *8. However, the Second Circuit's decision to affirm the sentence in *Milikowsky* is inapposite to Movant's § 2255 ineffective of assistance of counsel claim. Regardless, for the reasons discussed above in Part III.A., Movant cannot establish prejudice.

Movant is not entitled to relief as to this issue.

9

### C. Counsel's failure to present favorable computer forensic evidence does not entitle Movant to relief under *Strickland*.

Movant alleges in Issue Three that counsel was ineffective for "[f]ailing to present favorable computer forensic evidence that would have, *inter alia*, corroborated my claim that I did not know I was sharing files with the public and that I did not engage in a course of deleting illegal files from my computer." Doc. 23 at 5.

In support, Movant cites an email that counsel received from computer expert Greg Chatten stating "Based on the quantity of existing, shared files and those where a download was in progress[,] I would not say there was much effort put into deleting illegal material." Doc. 3-4 at 1. Movant alleges that this "clearly would have cut against the government's contention that he had possessed and deleted many more images that were on the computer when it was seized." Doc. 27 at 10. Movant avers that he is not challenging the sufficiency of the evidence or the misapplication of a Guideline. *Id*. He does not appear to dispute that his plea was knowing and voluntary. *Id*. at 11. Rather, as with the claim in Issue One, Movant contends that this information would have mitigated his degree of guilt at sentencing.

The record refutes Movant's claims that counsel was ineffective for failing to present favorable computer evidence at sentencing. First, to Movant's contention that he did not know about the file-sharing program, as detailed above, Movant admitted that he owned the computer on which he installed the Ares file-sharing software and that he used it to download child pornography and that "several videos depicting child pornography from a remote computer using a peer-to-peer file-sharing program" were on his computer. Crim. Doc. 44 at 7. Similarly, the offense conduct in the PSR states that Movant "acknowledged owning the computer on which he installed the Ares file-sharing software and that he used it to download child pornography," that his computer "was observed sharing several videos containing child pornography," and that an investigator "was able to obtain four video files from the suspect computer." Doc. 53 at 6. As explained above, Movant agreed to the factual basis of PSR, *Abrica-Sanchez*, 808 F.3d at 334. Movant's two- level distribution enhancement was based on: Movant's admissions that he installed the Ares file-sharing software; forensic evidence and admissions that Movant utilized the file-sharing program to receive and view child pornography; and forensic evidence that Movant, via his computer, shared several videos containing child pornography. Any additional arguments, evidence, or presentations regarding Movant's computer skills would have been meritless or *de*

*minimus* at best. *Rodriguez*, 17 F.3d at 226 (counsel's failure to advance a meritless argument cannot constitute ineffective assistance).

Second, as to Movant's contentions regarding the deletion of files, the record indicates that Movant agreed to facts in the PSR indicating that, during a post-*Miranda* interview, the investigator explained what Movant's IP address was and showed him a sheet of approximately 400 videos that he had viewed or downloaded since July 21, 2013. "The investigator went onto explain that he printed off the 400 but when he let it go up to 1,000 it listed them as well. The investigator advised that he stopped printing at 400 to save paper." Movant also admitted to downloading videos before he went to prison in 2010. Doc. 53 at 6. *See Abrica-Sanchez*, 808 F.3d at 334 ("[a] fact in a PSR to which the defendant has not specifically objected is a fact admitted by the defendant.").[6] Counsel's performance was reasonable because any evidence or argument regarding Movant's deleting practices would have been meritless. Based on the quantity of existing and shared files, such evidence of deletion would not have mitigated Movant's degree of guilt at sentencing. Further, for the reasons discussed above in Part III.A., Movant fails to demonstrate prejudice.

Movant is not entitled to relief as to Issue Three.

### D. Counsel's presentation of a "highly damaging psychological report and testimony" does not entitle Movant to relief under *Strickland*.

Issue Four stems from counsel's "Motion for Downward Departure/Variance." Doc. 23 at 5; Crim. Doc. 58. Attachments to the motion presented in the criminal case included articles regarding sex offender sentencing and the low risk of recidivism for child pornography offenders. Relevant to this claim, also attached was an evaluation prepared by Dr. Londe. Crim. Doc. 59 at 55-71. Movant points out that the evaluation in part characterized him as being in the "Denier-Dissimulator child sexual abuse category" with an "Associated Probability" of 50 percent; the evaluation further stated that Movant was in the medium risk group of sexual recidivism because he had not completed a cognitive behavioral program; and the evaluation stated that Movant had a high "social desirability score," meaning that he was in the "high problematic range" for his unwillingness to admit a violation of common social mores. Crim. Doc. 59 at 57, 64, 66. However,

---

[6] Chatten's email does not indicate a determination that Movant did not delete files. Rather, it appears to speculate that Movant did not delete many files based on the number of shared files found and the fact that one or more downloads was in progress. Yet, regardless of whether Movant engaged in a course of deleting files containing child pornography, he did admit to possessing 1,000 of them.

11

the report also indicated, *inter alia*, that Movant "does not appear to have a serious persistent sexual addiction to child/adolescent pornography," and that Movant would be "an excellent candidate for outpatient treatment with the likelihood of reducing all recidivism risks." Crim. Doc. 59 at 66.

Defense counsel called Dr. Londe to testify at sentencing. Dr. Londe stated that he had treated Movant at least weekly for close to 12 months. Dr. Londe found a connection between Movant's alcoholism and the offense, noted that he had not committed any contact offenses against children, and stated that he was an excellent candidate for outpatient treatment. When Mr. Wampler asked whether Dr. Londe believed Movant would be "crime free or at least free from the addiction of child pornography," the doctor responded, "From the behavior I've seen from him in the year or so that I've worked with him, yes. He's very responsible in the position that he holds, spends a great deal of time with it." Doc. 64 at 24. Additionally, Dr. Londe testified that his assessment "does not indicate a danger of continued possession and distribution of child pornography" with continued treatment. *Id.* at 25. He further testified that Movant's prognosis is "excellent." *Id.*

On cross-examination, Dr. Londe acknowledged the "denier-dissimulator" finding, explaining that Movant was in the medium-risk group for abusing children if he is around them. *Id.* at 27. Dr. Londe additionally noted that Movant fell into the medium risk for sexual recidivism, and noted that Movant initially stated his problem started the prior year but that it became clear that the problem "extended further than that." *Id*. at 27-28. However, Dr. Londe also testified that if Movant still has a problem with child pornography, "I haven't seen it in the times that I have worked with him." *Id.* at 28.

Upon questioning by the Court, Dr. Londe stated that he had taken into account Movant's 2006 history of possessing child pornography and indicated that this was "something [the doctor] would certainly be concerned about to follow." *Id*. at 31-32.

After careful review, Movant's argument that his counsel was ineffective for submitting the doctor's report and for putting him on the stand fails. Although not every aspect of Dr. Londe's report and testimony was positive, the report and testimony in general were highly favorable. Regardless, it is well-established that strategic choices made after thorough investigation of law and facts relevant to plausible options are "virtually unchallengeable," *Rodela-Aguilar v. United States*, 596 F.3d 457, 464 (8th Cir. 2010). Additionally, for the reasons set forth above in Part

12

III.A., Movant cannot establish prejudice.

### E. Counsel's decision not to present statistics regarding the average sentence for a similarly situated defendant does not entitle Movant to relief under *Strickland*.

Movant alleges in Issue Five that counsel was ineffective for failing to present statistics to the Court. Doc. 23 at 5. In support, Movant, who was sentenced to 180 months' incarceration, attaches analysis indicating that the median sentence imposed for defendants in Movant's situation nationwide result in 154.4 months and analysis indicating that the sentencing judge imposed a median sentence of 146 months in cases with similar charges.

The Supreme Court has rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Gall v. United States*, 552 U.S. 38, 47 (2007). *See also United States v. Hummingbird*, 743 F.3d 636, 637 (8th Cir. 2014) (noting that a reviewing court can consider the extent of the deviation from the Guidelines but must also "give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance").

In this case, at sentencing the Court articulated sufficient reasons to support Movant's sentence. Additionally, for the reasons set forth above in Part III.A., Movant cannot show prejudice.

### F. Counsel's decision at sentencing to withdraw all "sentencing guidelines objections," except those relating to criminal history, does not entitle Movant to relief under *Strickland*.

Movant alleges in Issue Six that counsel was ineffective for "inexplicably withdrawing all sentencing guideline objections, except for those relating to criminal history, at the time of sentencing." Doc. 23 at 5. Movant initially objected to the prepubescent, distribution, sadistic and computer enhancements, and to his criminal history score. Crim. Docs. 52, 53. At the sentencing hearing, Movant withdrew objections to the four enhancements, and the Court sustained his objection to the criminal history score.[7]

Here again, the record establishes that Movant cannot meet his burden of showing unreasonable performance by counsel: as noted above, the PSR indicated that the § 2G2.2(b)(3)(F) distribution enhancement was supported by the factual basis as set out in the PSR, to which Movant

---

[7] The Court asked Movant whether he was in agreement with defense counsel about withdrawing the objections to the PSR's Guidelines calculations, and Movant indicated that he was.

agreed. Movant makes no argument concerning the applicability of the other three enhancements. Movant therefore has not shown a reasonable probability that his objections would have been sustained, resulting in a different base offense level, such that he would have received a different sentence. *Apfel*, 97 F.3d at 1076–77 (to obtain relief, a § 2255 movant must show there is a reasonable probability that if an objection had been made, it would have been sustained, and the result of the proceeding would have been different). Additionally, as set forth above in Part III.A., Movant cannot show prejudice.

Movant is not entitled to relief as to Issue Six.

### G. Movant's allegations regarding his mother securing the filing of a notice of appeal do not warrant an evidentiary hearing under *Strickland*.

In Issue Seven, Movant claims that counsel was ineffective for failing to file a notice of appeal, "although I told my mother to explicitly instruct him to do so." Doc. 23 at 5.

"An attorney's failure to file a notice of appeal upon the client's request constitutes ineffective assistance of counsel, and no specific showing of prejudice is required." *United States v. Sellner*, 733 F.3d 927, 930 (8th Cir. 2014). "When a district court receives conflicting statements – one from a § 2255 petitioner and one from her former counsel – the court cannot 'mak[e] a factual determination based on the relative credibility of [these individuals] without the benefit of an evidentiary hearing.'" *Witthar v. United States*, 793 F.3d 920, 923 (8th Cir. 2015) (quoting *Franco v. United States*, 762 F.3d 761, 765 (8th Cir. 2014)). However, "for a petitioner to succeed, he must show that he made his desire to appeal evident to his attorney." *Yodprasit v. United States*, 294 F.3d 966, 969 (8th Cir. 2002). In other words, a movant "must show that [he] instructed [his] counsel to file an appeal." *Barger v. United States*, 204 F.3d 1180, 1182 (8th Cir. 2000). Further, "It is well established that, for an indigent defendant, the 'right to be furnished counsel [for appeal] does not depend upon a request,' but the desire to appeal must be manifest." *Barger*, 204 F.3d at 1182 (citations omitted). "A bare assertion by the petitioner that she made a request is not by itself sufficient to support a grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary proposition." *Id.*

Movant's sentencing hearing was conducted on February 22, 2017. Crim. Doc. 64. At its conclusion, the Court instructed Movant that he had 14 days from the date of judgment to appeal his sentence or he would "forever lose your right to appeal." *Id.* at 46. The Court further informed Movant that if he wished to appeal, "Mr. Wampler or the clerk of the court can immediately file

14

that notice of appeal on your behalf." *Id.*

Following sentencing, the following email chain transpired between Movant and/or his mother and defense counsel:

> February 23, 2017, at 1:05 PM
> From: Ernie Haney <ezmedical0214@yahoo.com>
> To: Dee Wampler <dee@deewampler.com>:
>
> The judge mentioned we had 10 days to file an appeal, is that something we should do? In court yesterday
>
> February 25, 2017, at 9:56 PM
> From: Dee Wampler,
> To: Ernie Haney <ezmedical0214@yahoo.com>:
>
> There are no grounds in my opinion. I do not handle appeals.
>
> \*\*\*
>
> March 2, 2017, at 8:50 AM, From: Rachel Veatch <rachel@deewampler.com>
> To: Ernie Haney <ezmedical0214@yahoo.com>:
>
> Jo Ann,
> Is Ernie interested in filing an appeal? . . it has to be done within ten (10) days. In our opinion, he does not have grounds, but we need to know if he intends to do so. Thanks!
> Rachel Veatch
> Assistant to Dee Wampler
>
> March 2, 2017, at 12:17 PM, From: Ernie Haney <ezmedical0214@yahoo.com>
> To: Rachel Veatch:
> I'm having someone to look into doing an appeal, don't know if they think we have a chance, haven't heard anything back yet
>
> March 2, 2017, at 1:15 PM, From: Rachel Veatch,
> To: Ernie Haney <ezmedical0214@yahoo.com>:
>
> Tomorrow is day 10 – it will need to be filed by tomorrow. Let me know what his wishes are and we will see what we can do to help.

Docs. 3-8, 3-9 (non-substantive edits added for clarity).

On this record, the Court finds that Movant is not entitled to an evidentiary hearing as to Issue Seven. As noted above, the standard requires that a movant "must" show that he instructed counsel to file an appeal. *Barger*, 204 F.3d at 1182. Here, however, Movant's allegation is that

counsel failed to file a notice of appeal after Movant instructed *his mother* to communicate that to counsel. Nowhere does Movant allege that he made such an instruction to counsel. For this reason alone, Movant has not established deficient performance. *Id.* Moreover, the uncontroverted record indicates that Movant was advised by the Court that he had a limited period of time to file a notice of appeal, and the Court additionally advised Movant on how to file a notice of appeal. The record further indicates that counsel communicated with Movant and/or to his mother to solicit Movant's wishes and that neither Movant nor his mother instructed counsel to file a notice of appeal; instead, Mr. Wampler's office was informed that another attorney was being consulted. Movant thus cannot meet his burden of establishing deficient performance.

Movant is not entitled to relief as to Issue Seven.

> **H. Movant's allegations relating to his counsel failing to consult with him directly about filing of a notice of appeal and his allegations that his counsel was ineffective for failing to appeal certain grounds (Issues Eight and Nine) do not warrant an evidentiary hearing under *Strickland*.**

In Issue Eight, Movant claims that counsel was ineffective for "[f]ailing to consult with me directly, as opposed to providing conclusory and inaccurate information to my mother, and failing to speak to me directly to ascertain my wishes regarding my right to appeal." Doc. 23 at 5. The "inaccurate information" appears to refer to defense counsel's statement that Movant had 10 days rather than 14 days to file a notice of appeal and defense counsel's statement that "there are no grounds to appeal in my opinion." Docs. 3-8, 3-9.

In Issue Nine, Movant alleges that counsel was ineffective for

> Failing to appeal the sentence on meritorious grounds including but not limited to the substantive unreasonableness of the sentence; the unreasonableness of the child pornography guidelines in general, the erroneous application of the knowing distribution enhancement based solely on use of a peer-to-peer file sharing network, and the failure to grant a two-level reduction pursuant to U.S.S.G. § 2G2.2(b)(1)."

Doc. 23 at 5.

Where a defendant has not specifically requested an appeal, the reasonableness of counsel's conduct is judged by whether counsel had a duty to "consult" about the possibility of an appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). "[C]ounsel has a constitutionally imposed duty to consult . . . when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular

defendant reasonably demonstrated to counsel that he was interested in appealing." 528 U.S. at 480. In making this determination, courts must consider all of the information counsel knew or should have known; in other words, courts consider the totality of the circumstances. *Id.* One "highly relevant factor" is whether the conviction follows a trial or a guilty plea, because a plea "reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to the judicial proceedings." *Id.* "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. at 484. In other words, "[c]ounsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for deficient performance, he would have appealed, counsel's deficient performance has not deprived him of anything, and he is not entitled to relief." *Id.*

Here, in reviewing the totality of the circumstances, the Court finds that Movant has not met his burden of establishing the counsel was deficient regarding counsel's alleged failure to consult with Movant about the possibility of an appeal and to appeal certain issues. As an initial matter, there is no reason to believe that a rational defendant would want to appeal this proceeding after entering a plea of guilty and after having received a sentence that was significantly below the Guidelines. Further, there is no indication that Movant "reasonably demonstrated to counsel that he was interested in appealing" inasmuch as counsel communicated with Movant and/or his mother about the possibility of appealing, and counsel was not provided a reason to believe he needed to assist in filing a notice of appeal. To the contrary, counsel's office was told that another attorney was looking into it. The determination that counsel was not deficient is supported by the fact that the Court advised Movant of his right to file a notice of appeal, how to file the notice, and the correct deadline for doing so. *See Roe*, 528 U.S. at 480 (a sentencing court's instructions to a defendant about his appeal rights can be so clear and informative as to substitute for counsel's duty to consult such that counsel might reasonably decide he need not repeat the information).[8]

Further, because Movant cannot demonstrate a reasonable probability that he would have timely appealed but for counsel's failure to consult with him, he cannot show prejudice. *Id*. at 484.

---

[8] Additionally, Respondent accurately notes that the appellate issues Movant now proffers are non-meritorious given that Movant was sentenced well below the Guidelines, given that the Guidelines are advisory, given that waived issues are not reviewable on appeal, and given that Movant's sworn statements contradict his claim that he did not download a file-sharing program and given that law enforcement observed his computer sharing files.

As noted above, the email communications indicate that Movant and/or his mother was consulting with another attorney about the possibility of filing an appeal, and the record at sentencing definitively indicates that Movant was aware of the deadline and how to file a notice of appeal. Movant thus cannot show that he would have timely appealed but for his counsel's failure to consult with him.

Issues Eight and Nine are without merit.

> **I. Movant is not entitled to relief under *Strickland* regarding his allegations relating to counsel's performance as to "all aspects to conduct proper investigation and preparation and/or to make proper objections, motions, evidentiary submissions and/or arguments in connection with all stages of the case including but not limited to pretrial motions, the plea process, sentencing, and appeal," and allegations regarding the "aggregate effect of the above multi-faceted ineffectiveness" (Issues Ten and Eleven).**

In Issues Ten and Eleven, Movant argues that he is entitled to relief based on counsel's performance as to "all aspects . . . with all stages of the case" and the "aggregate effect" of the alleged ineffectiveness. Doc. 23 at 5. After review of the record, not only does the Court detect no ineffective assistance of counsel as to any of Movant's individual claims, but also Eighth Circuit precedent forecloses argument based on cumulative effect. *Cole v. Roper*, 623 F.3d 1183, 1196 (8th Cir. 2010) (citing *Hall v. Luebbers*, 296 F.3d 685, 692-93 (8th Cir. 2002).

Issues Ten and Eleven are without merit.

## IV. Evidentiary Hearing and Certificate of Appealability

Because the Court finds Movant has failed to demonstrate that a fundamental defect occurred that resulted in a complete miscarriage of justice, and his contentions are contrary to the record and without merit, Movant's motion to vacate his sentence is denied. Additionally, since the motions, files, and records conclusively show Movant is not entitled to relief, Movant's request for an evidentiary hearing is denied. *See Roundtree v. United States*, 751 F.3d 923, 925 (8th Cir. 2014) ("A Section 2255 movant is entitled to an evidentiary hearing . . . unless the motion, files, and record conclusively show he is not entitled to relief.").

Additionally, pursuant to Rule 11 of the Rules Governing Section 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to Movant. A certificate of appealability may be issued "only if [Movant] has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Because Movant has made no such showing, the Court declines to issue a certificate of appealability.

## V. Conclusion

For the foregoing reasons, Movant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is DENIED, a certificate of appealability is DENIED, and this case is DISMISSED.

**IT IS SO ORDERED.**

                                                  s/ Roseann A. Ketchmark
                                                  ROSEANN A. KETCHMARK, JUDGE
                                                  UNITED STATES DISTRICT COURT

DATED: September 26, 2018